UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 03-20487-CIV-SEITZ/BANDSTRA

NATIONAL COMMUNICATION
LIMITED, INC., d/b/a NATCOM
MARKETING,

    Plaintiff,

vs.

REEBOK INTERNATIONAL LTD.,

    Defendant.
_____/



## DEFENDANT'S MOTION TO DISMISS

Defendant Reebok International Ltd. ("Reebok"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves for the entry of an Order dismissing Plaintiff's Complaint with prejudice.

**I.   Introduction**

Plaintiff has filed a three-count Complaint against Reebok. Counts I through III of the Complaint purport to state causes of action against Reebok for fraudulent misappropriation, breach of implied contract, and for alleged violations of the Uniform Trade Secrets Act, respectively. As shown below, each of these Counts should be dismissed with prejudice as a matter of law.

> II. **Count I, For "Fraudulent Misappropriation," Should Be Dismissed With Prejudice Because It Fails To State A Cause Of Action Upon Which Relief Can Be Granted.**
>
> > A. *Florida Does Not Recognize A Cause Of Action For "Fraudulent Misappropriation," And Plaintiff Has Failed To State A Cause Of Action For Fraud.*

Count I purports to state a cause of action against Reebok for "fraudulent misappropriation." Count I should be dismissed with prejudice because Florida does not recognize a cause of action for fraudulent misappropriation. Moreover, and to the extent Count I is really a mislabeled cause of action for fraud, Plaintiff has failed to state such a cause of action.

Under Florida law:

> The elements of actionable fraud are (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party.

*See Lance v. Wade*, 457 So.2d 1008, 1011 (Fla. 1984); *see also Iden v. Kasden*, 609 So.2d 54, 55 (Fla. 3d DCA 1993) (same); *Yanks v. Barnett*, 563 So.2d 776, 777-78 (Fla. 3d DCA 1990) (same); *Tourismart of America, Inc. v. Gonzalez*, 498 So.2d 469, 471 (Fla. 3d DCA 1986) (same); *Hillcrest Pacific Corp. v. Yamamura*, 727 So.2d 1053, 1055 (Fla. 4th DCA 1999) (same). Here, Plaintiff has failed to plead facts supporting, among other things, the first and fourth elements.

With respect to the *first element*, Plaintiff has completely failed to allege that Reebok made any statement to Plaintiff, much less a false statement. Nowhere in the Complaint does Plaintiff identify any statement made by Reebok to Plaintiff

that was allegedly false. Put simply, Plaintiff has failed to state a cause of action for fraud because it has not alleged that Reebok made a false statement. This, alone, is sufficient for the dismissal with prejudice of Count I.

With respect to the *fourth element*, Plaintiff has failed to allege it relied upon a false statement made by Reebok. Count I generally alleges that Reebok was considering two marketing options: (1) using Colombian singer Shakira as a spokeswoman, or (2) conducting a "small-scale talent search, with the objective of 'finding the next Reebok star'" (Complaint, ¶¶9, 11, and Exhibit C). Plaintiff further alleges that Reebok "concocted a scheme" to "hide its true intentions from the plaintiff" and "deceive the plaintiff into thinking that the promotional campaign [involving Shakira] had been dropped" in favor of "finding the next Reebok star" (Complaint, ¶¶11, 12, 14). According to Exhibit C of the Complaint, however, it was not Reebok who suggested to Plaintiff that the Shakira idea be deemphasized in favor of finding the next Reebok star. Instead, it was Plaintiff who made that suggestion to Reebok.

Specifically, the first paragraph of Exhibit C, which paragraph 11 of the Complaint describes as a letter from Plaintiff to Reebok, provides: "We [Plaintiff] have researched the two creative options we discussed last week and feel that based on market data and demographic make-up the creative option of finding the next Reebok star is the better option." Thus, it was ***Plaintiff*** who suggested that the option of finding the next Reebok star should be pursued – not Reebok. Accordingly, and based upon the allegations of Plaintiff's own Complaint, Plaintiff

3

did not rely upon any statement or conduct by Reebok with respect to which option would be pursued. Instead, Plaintiff acted in reliance upon its own "research." This, too, is sufficient for the dismissal with prejudice of Count I.

By failing to make allegations to support the first and fourth elements of a cause of action for fraud, Plaintiff has not only failed to allege essential elements of that cause of action, but has also violated Rule 9(b) of the Federal Rules of Civil Procedure and Rule 1.120(b) of the Florida Rules of Civil Procedure, each of which require fraud to be pleaded with specificity.[1] Rule 1.120(b) requires plaintiffs to plead "who made the false statement, the substance of the false statement, the time frame in which it was made and the context in which the statement was made." *See Bankers Mutual Capital Corp. v. United States Fidelity & Guaranty Corp.*, 784 So.2d 485, 490 (Fla. 4th DCA 2001); *Robertson v. PHF Life Insurance Co.*, 702 So.2d 555, 556 (Fla. 1st DCA 1997).

The Eleventh Circuit has interpreted Rule 9(b) in a similar fashion, requiring plaintiffs to plead:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

---

[1] Plaintiff filed this action in Florida state court, and Reebok subsequently removed it to this Court. Thus, although this action is now governed by the Federal Rules of Civil Procedure, at the time of filing it was governed by the Florida Rules of Civil Procedure. Accordingly, both Federal Rule 9(b) and Florida Rule 1.120(b) will be discussed here.

4

*See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)); *see also United States v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (same). Even a cursory review of the Complaint establishes that Plaintiff has failed to plead fraud with the specificity required by Rule 9(b) and Rule 1.120(b).

In sum, Florida does not recognize a cause of action for "fraudulent misappropriation" and, to the extent Count I is actually a cause of action for fraud, Plaintiff has failed to allege the essential elements of that tort. Plaintiff has also failed to make allegations with the specificity required by both Federal Rule 9(b) and Florida Rule 1.120(b). Accordingly, Count I should be dismissed with prejudice.

B.   *Count I Is Preempted By The Uniform Trade Secrets Act.*

Count I purports to state a cause of action for fraudulent misappropriation and, as mentioned above, Count III purports to state a cause of action for alleged violations of the Uniform Trade Secrets Act, §§688.001 *et seq.*, Florida Statutes (the "UTSA"). The subject matter underlying Counts I and III is the same. More specifically, the marketing and advertising plans that Plaintiff alleges were fraudulently misappropriated in Count I, are the same marketing and advertising plans that Plaintiff, in Count III, characterizes as "trade secrets" that allegedly were misappropriated. Because Counts I and III are premised upon the same marketing and advertising plans, and because both Counts I and III allege that the

5

plans were misappropriated, Count I is preempted by the UTSA and should be dismissed with prejudice.

"Florida's Uniform Trade Secret Act displaces tort law regarding trade secret misappropriation." *See Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F.Supp.2d 1271, 1291 (S.D. Fla. 2001) (citing *All Pro Sports Camp, Inc. v. Walt Disney Co.*, 727 So.2d 363, 367 (Fla. 5th DCA)). Thus, Count I is "displaced" by the UTSA and Count III because (1) Counts I and III are premised upon the same marketing and advertising plans, (2) Counts I and III allege that the marketing and advertising plans were misappropriated, and (3) Count III characterizes the marketing and advertising plans as falling within the purview of the UTSA. Accordingly, Count I should be dismissed with prejudice.

    C.    *Plaintiff Lacks Standing To Assert A Claim For The Misappropriation Of Shakira.*

The thrust of Count I is that Reebok "misappropriated the use of Shakira" (Complaint, ¶12). There are no allegations in the Complaint, however, remotely suggesting that Plaintiff has standing to assert a claim for the alleged misappropriation of Shakira. For instance, Plaintiff does not allege that it is Shakira, does not allege that it is Shakira's exclusive agent or representative, and does not allege that it enjoys any contractual relationship with Shakira. Absent allegations of this nature – allegations that Plaintiff cannot make – Plaintiff lacks standing to assert a claim for the misappropriation of Shakira. If Shakira was misappropriated, then a claim for her misappropriation lies only with Shakira or her agents and representatives.

6

### III. Count II, For "Breach Of Implied Contract," Should Be Dismissed With Prejudice Because It Fails To State A Cause Of Action For Either Breach of Contract Or Unjust Enrichment.

Count II purports to state a cause of action against Reebok for "breach of implied contract." A reading of Count II, however, reveals that it is actually a single claim for both breach of contract and unjust enrichment. For instance, at paragraph 18 of the Complaint, Plaintiff alleges that Reebok "unjustly enriched itself at plaintiff's expense." Yet, at paragraph 20 of the Complaint, Plaintiff alleges that Reebok "has failed and refused to acknowledge its contractual obligations to plaintiff." As illustrated by these allegations, Count II wanders back and forth between a claim for breach of contract and a claim for unjust enrichment.

Florida, however, does not permit such tactics. Under Florida law, a party cannot seek to recover damages through a claim for breach of contract while simultaneously seeking to recover equitable damages under a theory of unjust enrichment, as if the contract does not exist. *See Miracle Center Development Corp. v. M.A.D. Construction, Inc.*, 662 So.2d 1288, 1290 (Fla. 3d DCA 1995); *Tobin & Tobin Ins. Agency, Inc. v. Zeskind*, 315 So.2d 518, 520 (Fla. 3d DCA 1975) (same); *Cherokee Oil Co. Ltd. v. Union Oil Co. of California*, 706 F.Supp. 826, 830 (M.D. Fla. 1989) (citing *Tobin*, 315 So.2d at 520) (same). Thus, Count II can be treated as a claim for breach of contract *or* a claim for unjust enrichment, but it cannot be treated as a single claim for both.

### A.   *Any Claim For Breach of Contract Fails As A Matter Of Law.*

To the extent Count II is a claim for *breach of contract*, it fails as a matter of law. To prevail on a claim for breach of contract, Plaintiff must plead and prove, among other things, an offer, acceptance, consideration, a breach of the contract, and damages resulting from the breach. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (applying Florida law); *Abruzzo v. Haller*, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992); *Abbott Laboratories, Inc. v. General Electric Capital*, 765 So.2d 737, 740 (Fla. 5th DCA 2000); *Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So.2d 253, 255 (Fla. 2d DCA 1994). Not only has Plaintiff failed to attach a copy of the purported contract to the Complaint, but it has also failed to plead the essential elements of a cause of action for breach of contract.

For instance, nowhere in the Complaint does Plaintiff allege that it offered its services to Reebok, and Reebok accepted; or that Reebok offered to retain Plaintiff's services, and Plaintiff accepted. While this, alone, is sufficient to support the dismissal of a claim for breach of contract, there is more. In paragraph 19 of the Complaint, Plaintiff alleges that its damages should equal "fifteen percent (15%) of the entire media buy in question, during the duration of the implementation of the campaign," but nowhere in the Complaint does Plaintiff allege that Reebok ever offered or accepted such terms. Indeed, nowhere in the Complaint does Plaintiff identify any "payment terms" offered or accepted by Reebok. Put simply, Plaintiff is attempting to sue on a contract in the complete absence of allegations describing the

8

terms and contours of the purported contract. Reebok cannot be held liable for breaching a contract whose terms Plaintiff cannot even allege, let alone identify.

In sum, if Count II is a claim for breach of contract, then that claim should be dismissed with prejudice.

B.   *Any Claim For Unjust Enrichment Fails As A Matter Of Law.*

To the extent Count II is a claim for *unjust enrichment*, it also fails as a matter of law. "Where unjust enrichment is asserted, a party is liable for services rendered only when he requests the other party to perform the services or knowingly and voluntarily accepts their benefits" *See Coffee Pot Plaza Partnership v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So.2d 883, 884 (Fla. 2d DCA 1982); *see also Nursing Care Services, Inc. v. Dobos*, 380 So.2d 516, 518 (Fla. 4th DCA 1980) (same); *E&M Marine Corp. v. First Union Nat'l Bank*, 783 So.2d 311, 312 (Fla. 3d DCA 2001) (same). Plaintiff does not allege that Reebok did either.

The thrust of Count II is that Plaintiff used its "special and unique contacts" to make contact with Shakira and determined that she would be "available for . . . a global marketing campaign" (Complaint, ¶¶9-10). Nowhere in the Complaint, however, does Plaintiff allege that Reebok asked Plaintiff to make, or asked Plaintiff to attempt to make contact with Shakira. Indeed, and as conceded by Exhibit B to the Complaint, the first time that Plaintiff even mentioned Shakira to Reebok was by letter dated April 17, 2002. According to paragraph 9 of the Complaint, the April 17 letter came *after* Plaintiff allegedly made contact with

9

Shakira.[2]  Surely, if Reebok had requested that Plaintiff make contact with Shakira, then allegations to that effect would appear in the Complaint and, at the very least, the April 17 letter would have somehow mentioned the fact that Plaintiff contacted Shakira and determined her availability pursuant to Reebok's request.  In light of the absence of such allegations in the Complaint, and the absence of such language in the April 17 letter, there can be no question that any time and resources expended by Plaintiff in contacting Shakira were expended at Plaintiff's own volition, and *not* at the request of Reebok.

Plaintiff's allegations in paragraph 17 of the Complaint – that communications between the parties and a single meeting "constitute an implied contract" – are unavailing.  Regardless of how many communications and meetings there were, if Reebok did not request that Plaintiff provide services, then there can be no claim for unjust enrichment.  Communications and meetings, by themselves, cannot create "an implied contract under which [Reebok] engaged plaintiff to create and carry out the marketing plan in question" (Complaint, ¶17).  Instead, an implied contract can be created *only* if Reebok, in those communications and meetings, requested Plaintiff to perform services.  There are no allegations in the Complaint that Reebok made such a request in the communications or at a meeting.

Furthermore, there are no allegations in the Complaint that Plaintiff's alleged contacts with Shakira, or anything that Plaintiff did with respect to

---

[2] Exhibit B mentions Shakira merely as an "up and coming Hispanic talent" that Reebok might consider sponsoring.  There is absolutely no suggestion in the April 17 letter that Plaintiff was putting forth Shakira as someone who Plaintiff had connections with and with whom Plaintiff had discussed the possibility of sponsorship by Reebok.

Shakira, benefited Reebok at all. Plaintiff alleges that Reebok ultimately sponsored Shakira, but nowhere in the Complaint does Plaintiff allege that the sponsorship was the result of anything Plaintiff did. The Complaint completely fails to exclude the possibility that Reebok's sponsorship of Shakira was the result of an independent source. For example, the Complaint does not exclude the possibility that the sponsorship was the result of the efforts of Reebok employees or representatives who never dealt with Plaintiff. That Plaintiff views the work it allegedly did as having value is irrelevant if that work did not benefit Reebok. *See, i.e., Coffee Pot*, 412 So.2d at 884 ("While the repairs [performed by the plaintiff] no doubt enhanced the value of the equipment, it is speculative to say that any benefit has come" to the defendant).

Plaintiff has failed to state a cause of action for unjust enrichment because Plaintiff has not alleged that Reebok requested Plaintiff to perform services, or that Reebok benefited from Plaintiff's alleged services. If Count II is a claim for unjust enrichment, then that claim should be dismissed with prejudice.

### IV. Count III, For Alleged Violations Of The UTSA, Should Be Dismissed With Prejudice Because The Materials At Issue Are Not A "Trade Secret."

Count III purports to state a cause of action against Reebok under the UTSA for misappropriation of trade secrets. Count III should be dismissed with prejudice because the materials that were allegedly misappropriated do not qualify as a "trade secret," as defined by the UTSA.

For information to qualify as a trade secret under the UTSA, the information must meet *each* of the two prongs contained in §688.002(4), Florida Statutes. The *first prong*, §688.002(4)(a), requires that the information "[d]erive[ ] independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use . . . ." In addressing the value of trade secrets, the United States Supreme Court has written: "We emphasize that the value of a trade secret lies in the competitive advantage it gives its owners over competitors." *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 n.15 (1984).

Similarly, courts in other jurisdictions addressing other states' versions of the UTSA – versions that are identical to Florida's – have held that information has independent economic value so as to constitute a trade secret when the information, if disclosed to or acquired by a competitor, would destroy a competitive advantage previously enjoyed by the owner of the information over the competitor. *See Welsh v. Rockmaster Equipment Mfg., Inc.*, 4 F.Supp.2d 659, 668 (E.D. Tex. 1998) (a trade secret is information that "gives the owner an opportunity to obtain an advantage over its competitors who do not know or use the secret"); *Enterprise Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1068 (Ariz. Ct. App. 2000) (a trade secret is information that "gives one an opportunity to obtain an advantage over competitors who do not know of or use it"); *US West Communications, Inc. v. Office of Consumer Advocate*, 498 N.W.2d 711, 714 (Iowa 1993) (a trade secret is "information which protects the owner's competitive edge or advantage" and has economic value when

"it would be useful to a competitor and require cost, time, and effort to duplicate"). Plaintiff does not and cannot allege that the information described in the Complaint satisfies §688.002(4)(a).

The information that Plaintiff characterizes as a trade secret is a marketing and advertising plan that was supposedly developed *solely for Reebok* for use in marketing and advertising Reebok's products. In its Complaint, Plaintiff does not and cannot allege that Reebok and Plaintiff are competitors. Accordingly, the information, in the hands of Reebok, would not and could not give Reebok a competitive advantage over Plaintiff.

Additionally, to the extent that a competitor could use the marketing and advertising plan in order to gain a competitive advantage, it would be *Reebok's* competitors using the information to gain a competitive advantage over *Reebok*. On this point, a California state appellate court, in addressing whether a marketing plan could constitute a trade secret, held that the "information would be valuable if known by a competitor because it would allow the competitor to predict and counter [the owner's] advertising and marketing." *See Whyte v. Schlage Lock Co.*, 125 Cal.Rptr.2d 277, 288 (Cal. Ct. App. 2002). Plaintiff does not and cannot allege that Reebok now has the ability to predict and counter Plaintiff's marketing and advertising, thereby gaining a competitive advantage over Plaintiff. The marketing and advertising plan cannot satisfy §688.002(4)(a).

The *second prong* of §688.002(4), which is §688.002(4)(b), provides that in order for information to qualify as a trade secret it must be "the subject of efforts

13

that are reasonable under the circumstances to maintain its secrecy." Nowhere in its Complaint does Plaintiff allege that the marketing and advertising plan was secret, much less that Plaintiff took any steps to maintain the secrecy of the information.

For instance, nowhere in the Complaint does Plaintiff allege that it required Reebok to enter into a confidentiality agreement before the information was disclosed to Reebok. Nowhere in the Complaint does Plaintiff allege that documents it provided to Reebok were identified as containing trade secrets. Indeed, neither Exhibit B nor Exhibit C to the Complaint, which ostensibly are part of the information that Plaintiff characterizes as a trade secret, are marked "Confidential," "Private," or "Trade Secret." The owner of a trade secret who fails to label documents as containing trade secret material has not made reasonable efforts to maintain the documents' secrecy. *See Sepro Corp. v. Florida Dep't of Environmental Protection*, 2003 WL 291002 at *3 (Fla. 1st DCA). The marketing and advertising plan cannot satisfy §688.002(4)(b).

Count III should be dismissed because the information underlying the Count does not qualify as a trade secret for the purposes of the UTSA.

## V. Conclusion

For the foregoing reasons, Reebok respectfully requests the entry of an Order dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Reebok
701 Brickell Avenue
Suite 3000
Miami, Florida  33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: /s/ Peter Prieto
Peter Prieto
Florida Bar No. 501492
Scott D. Ponce
Florida Bar No. 0169528

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail on this 25th day of March 2003, on Xavier L. Suarez, 2600 Douglas Road, Suite 600, Coral Gables, Florida 33134.

By: /s/ Peter Prieto

MIA1 #1211684 v1