UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED BY _____ D.C.

2003 APR 11  PM 3: 42

CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

CASE NO. 03-20487-CIV-SEITZ/BANDSTRA

NATIONAL COMMUNICATION
LIMITED, INC., d/b/a NATCOM
MARKETING,

      Plaintiff,

vs.

REEBOK INTERNATIONAL LTD.,

      Defendant.

_____/

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Reebok International Ltd. ("Reebok") submits the following reply in support of its Motion to Dismiss (the "Motion").

**I.    Count I Should Be Dismissed With Prejudice.**

    *A.    Plaintiff Has Failed To State A Cause Of Action For Fraud.*

In its Response, Plaintiff concedes that Count I, which is labeled "fraudulent misappropriation," is actually a purported cause of action for fraud. To prevail on a claim for fraud, Plaintiff must plead and prove, among other things, that (1) Reebok made a false statement concerning a material fact, and (2) Plaintiff detrimentally relied upon a false statement made by Reebok. *See Lance v. Wade*, 457 So.2d 1008, 1011 (Fla. 1984); *Iden v. Kasden*, 609 So.2d 54, 55 (Fla. 3d DCA 1993); *Yanks v. Barnett*, 563 So.2d 776, 777-78 (Fla. 3d DCA 1990); *Tourismart of America, Inc. v. Gonzalez*, 498 So.2d 469, 471 (Fla. 3d DCA 1986); *Hillcrest Pacific Corp. v. Yamamura*, 727 So.2d 1053, 1055 (Fla. 4th DCA 1999).



In its Response, and with respect to the making of false statements, Plaintiff argues it has satisfied this element because the Complaint alleges that there were "meetings" and "conference calls" between the parties, and Reebok "concocted a scheme" (Response, p.2). Nowhere in its Complaint or Response, however, does Plaintiff identify any statement – much less a false statement – made by Reebok to Plaintiff during the alleged meetings or conference calls, or in the course of the alleged scheme. Plaintiff has simply failed to allege that Reebok made a false statement.

Additionally, generic, boilerplate, and conclusory allegations that there were meetings and conference calls between Plaintiff and Reebok, and that Reebok concocted a scheme, are insufficient to satisfy the pleading requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure and Rule 1.120(b) of the Florida Rules of Civil Procedure.[1] These rules require Plaintiff to plead, among other things: (1) the precise substance of each allegedly false statement, (2) who made each allegedly false statement, (3) when each allegedly false statement was made, and (4) the context in which each allegedly false statement was made. *See Bankers Mutual Capital Corp. v. United States Fidelity & Guaranty Corp.*, 784 So.2d 485, 490 (Fla. 4th DCA 2001); *Robertson v. PHF Life Insurance Co.*, 702 So.2d 555, 556 (Fla. 1st DCA 1997); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)); *United States v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002). Specific and precise allegations of this nature are completely absent from Plaintiff's Complaint.

---

[1] Plaintiff filed this action in Florida state court, and Reebok subsequently removed it to this Court. Thus, although this action is now governed by the Federal Rules of Civil Procedure, at the time of filing it was governed by the Florida Rules of Civil Procedure. Accordingly, both Federal Rule 9(b) and Florida Rule 1.120(b) were discussed in the Motion and are discussed in this reply.

In a desperate attempt to save Count I, Plaintiff argues it has pleaded fraud with the requisite specificity because it has alleged "a number of false statements spanning almost a year and half" (Response, p.3).[2]   This argument is unavailing.  If a plaintiff cannot identify the substance of any of the numerous allegedly false statements made by a defendant, then fraud has not been pleaded with specificity.  Similarly, if a plaintiff cannot identify when, over an *eighteen month* period, a defendant made allegedly false statements, then fraud has not been pleaded with specificity.  Plaintiff has not only failed to allege an essential element of a cause of action for fraud, but it has also failed to allege fraud with the specificity required by Federal Rule 9(b) and Florida Rule 1.120(b).

With respect to the element requiring detrimental reliance, Count I generally alleges that Reebok was considering two marketing options:  (1) using Colombian singer Shakira as a spokeswoman, or (2) conducting a "small-scale talent search, with the objective of 'finding the next Reebok star'" (Complaint, ¶¶9, 11, and Exhibit C).  The thrust of Count I is that Reebok allegedly deceived Plaintiff into thinking that using Shakira had been eschewed in favor of finding the next Reebok star.  As addressed in the Motion, Exhibit C to the Complaint establishes that *Plaintiff* researched the two options and, based on that research, *Plaintiff* recommended to Reebok that the option of finding the next Reebok star should be pursued.  Clearly, Plaintiff acted in reliance upon its own "research," and not upon anything that Reebok said or did.

Not surprisingly, Plaintiff's Response avoids any mention of Exhibit C.  Instead, Plaintiff focuses upon three paragraphs of the Complaint that it believes contain sufficiently specific allegations of detrimental reliance (Response, p.3).  Plaintiff's reliance on these paragraphs is

---

[2] In its Response, and with respect to allegedly fraudulent written statements, Plaintiff notes that attached to its Complaint as Exhibits A, B, and C are three letters that were written by Plaintiff and sent to individuals at Reebok (Response, p.4).  These letters are statements made by Plaintiff to Reebok – they *are not* statements made by Reebok to Plaintiff.  Accordingly, Plaintiff's reference to these letters in an attempt to explain why it believes it pleaded fraud with the requisite specificity completely misses the mark.

misplaced because while the paragraphs allege – at best – that Plaintiff did some work, there are no allegations in the Complaint that Plaintiff did this work in reliance upon anything that Reebok said or did.  Indeed, Plaintiff does not and cannot allege which supposedly false statement purportedly made by Reebok caused Plaintiff to perform what work.  Plaintiff's failure in this regard is crucial because, by way of example, Plaintiff *could not* have performed work during the second month of the allegedly relevant eighteenth month period in reliance upon a statement made by Reebok during the eighteenth month. Plaintiff has simply failed to sufficiently allege that it detrimentally relied upon any statement made by Reebok.

Count I should be dismissed with prejudice because it fails to state a cause of action for fraud.

> B.   *Count I Is Preempted By The Uniform Trade Secrets Act*

Count I purports to state a cause of action for fraudulent misappropriation, and Count III purports to state a cause of action for alleged violations of the Uniform Trade Secrets Act, §§688.001 *et seq.*, Florida Statutes (the "UTSA").  Common law claims for misappropriation are preempted by the UTSA.  *See Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F.Supp.2d 1271, 1291 (S.D. Fla. 2001) (citing *All Pro Sports Camp, Inc. v. Walt Disney Co.*, 727 So.2d 363, 367 (Fla. 5th DCA)).

In its Response, Plaintiff argues that if it cannot state a cause of action for alleged violations of the UTSA, then the Court should not dismiss Count I solely as the result of preemption (Response, pp.4-6).  Not surprisingly, Plaintiff is unable to cite even one decision supporting this proposition.  It is important to note that even if Count I could somehow evade preemption, it would nonetheless remain subject to dismissal with prejudice because it fails to state a cause of action.

C.      *Plaintiff Lacks Standing To Assert A Claim For The Misappropriation Of Shakira.*

The thrust of Count I is that Reebok "misappropriated the use of Shakira" (Complaint, ¶12). There are no allegations in the Complaint, however, remotely suggesting that Plaintiff has standing to assert a claim for the alleged misappropriation of Shakira. For instance, Plaintiff does not allege that it is Shakira, does not allege that it is Shakira's exclusive agent or representative, and does not allege that it enjoys any contractual relationship with Shakira. Absent allegations of this nature – allegations that Plaintiff cannot make – Plaintiff lacks standing to assert a claim for the misappropriation of Shakira. If Shakira was misappropriated, then a claim for her misappropriation lies only with Shakira or her agents and representatives.

In its Response, Plaintiff first argues that its lack of standing should be ignored because Plaintiff should be treated as a "real estate broker" and because the section of the Motion addressing Plaintiff's lack of standing does not cite any decisions (Response, pp.6-7). Plaintiff, however, is unable to cite any fact pleaded in the Complaint on which the Court could base a finding that Plaintiff has standing to bring suit for the alleged misappropriation of Shakira. It is Plaintiff's burden to plead in its Complaint facts establishing its standing, and Plaintiff failed to carry its burden. *See, i.e., Miccosukee Tribe of Indians of Florida v. Florida State Athletic Commission*, 226 F.3d 1226, 1229-30 (11th Cir. 2000); *Pittman v. Cole*, 267 F.3d 1269, 1282 (11th Cir. 2001).

Perhaps in recognition of the futility of its position, Plaintiff then argues that "[m]ore importantly, the instant case does not stem solely from the discovery of Shakira to promote [Reebok's] products" (Response, p.7). In making this statement, Plaintiff appears to concede that it lacks standing to bring suit for the misappropriation of Shakira. Accordingly, Plaintiff's

claims, to the extent they relate to the alleged misappropriation of Shakira, should be dismissed with prejudice.

## II.      Count II Should Be Dismissed With Prejudice.

Although Count II purports to state a cause of action against Reebok for "breach of implied contract," a reading of the allegations comprising Count II reveals that it is actually a single claim for both breach of contract and unjust enrichment.  As fully addressed in the Motion, a party cannot seek to recover damages through a claim for breach of contract while simultaneously seeking to recover equitable damages under a theory of unjust enrichment, as if the contract does not exist. *See Miracle Center Development Corp. v. M.A.D. Construction, Inc.*, 662 So.2d 1288, 1290 (Fla. 3d DCA 1995); *Tobin & Tobin Ins. Agency, Inc. v. Zeskind*, 315 So.2d 518, 520 (Fla. 3d DCA 1975); *Cherokee Oil Co. Ltd. v. Union Oil Co. of California*, 706 F.Supp. 826, 830 (M.D. Fla. 1989) (citing *Tobin*, 315 So.2d at 520).

In its Response, and in apparent recognition of this well-settled Florida law, Plaintiff represents that Count II should be construed solely as a purported cause of action for unjust enrichment (Response, pp.7-9). To prevail on a cause of action for unjust enrichment, Plaintiff must plead and prove, among other things, that Reebok requested Plaintiff to perform services for Reebok, or that Reebok knowingly and voluntarily accepted benefits that Plaintiff provided to Reebok. *See Coffee Pot Plaza Partnership v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So.2d 883, 884 (Fla. 2d DCA 1982); *Nursing Care Services, Inc. v. Dobos*, 380 So.2d 516, 518 (Fla. 4th DCA 1980); *E&M Marine Corp. v. First Union Nat'l Bank*, 783 So.2d 311, 312 (Fla. 3d DCA 2001). The Complaint alleges neither.

In its Response, Plaintiff argues that it has stated a cause of action for unjust enrichment because paragraph 10 of the Complaint alleges that Plaintiff used "special and unique contacts"

to determine whether Shakira was available to be sponsored by Reebok (Response, p.8).[3] Plaintiff's argument is misplaced because, as addressed in the Motion, Plaintiff does not and cannot allege that Reebok asked Plaintiff to contact Shakira to determine whether she was available. Additionally, Plaintiff ignores the fact that Exhibit B to the Complaint and paragraph 9 of the Complaint establish that Plaintiff made contact with Shakira *before* Plaintiff even mentioned Shakira to Reebok. There can be no question that any time and resources expended by Plaintiff in contacting Shakira were expended at Plaintiff's own volition, and *not* at the request of Reebok.

In its Response, Plaintiff also argues that its deficient cause of action for unjust enrichment should be permitted to proceed because Plaintiff allegedly provided Reebok with services that were "very worthwhile" (Response, p.8). As addressed in the Motion, whether any of the services allegedly provided by Plaintiff were worthwhile, or even very worthwhile, is irrelevant. All that is important is whether services allegedly provided to Reebok benefited Reebok. *See, i.e., Coffee Pot*, 412 So.2d at 884. Plaintiff's allegation that the services it supposedly provided to Reebok were "very worthwhile" is of no consequence because Plaintiff does not allege that Reebok benefited from those services.

Finally, Plaintiff argues that even though it has not excluded the possibility that Reebok's sponsorship of Shakira was the result of an independent source having nothing to do with Plaintiff, Count II should nonetheless be permitted to proceed because "the logical inference here is that [Reebok] would never have even thought of Shakira had it not been for the plaintiff's suggestion – let alone reached her in time to contract for her services in a timely manner" (Response, p.9). This statement receives absolutely no support from the allegations of the

---

[3] Contrary to what appears at page 8 of the Response, nowhere in paragraph 10 of the Complaint does Plaintiff state that "the sponsorship of Shakira was the result of 'special and unique contacts' possessed by plaintiff's employees."

Complaint. Nowhere in the Complaint does Plaintiff allege that Reebok (or someone other than Plaintiff) would not have thought of Shakira by itself. Nowhere in the Complaint does Plaintiff allege that the idea of sponsoring a Hispanic singer, including Shakira, was an idea that was not already in the public domain.[4] Nowhere in the Complaint does Plaintiff allege that there was any date certain by which Reebok was required to contract with Shakira.

Count II should be dismissed with prejudice.

### III.  Count III Should Be Dismissed With Prejudice.

Count III purports to state a cause of action for alleged violations of the UTSA. To constitute a "trade secret" under the UTSA, §688.002(4)(a), Florida Statutes, requires that the information at issue "[d]erive[ ] independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."  In its Response, Plaintiff argues that the marketing and advertising plans at issue satisfy §688.002(4)(a) because the plans could give Reebok a competitive advantage over Reebok's competitors (Response, p.10).   This disingenuous argument misconstrues the applicable law.

As illustrated by the decisions cited in the Motion, the UTSA prevents an entity from misappropriating trade secrets *belonging to the entity's competitors*, and thereby gaining a competitive advantage over the competitors. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 n.15 (1984); *Welsh v. Rockmaster Equipment Mfg., Inc.*, 4 F.Supp.2d 659, 668 (E.D. Tex. 1998); *Enterprise Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1068 (Ariz. Ct. App. 2000); *US West Communications, Inc. v. Office of Consumer Advocate*, 498 N.W.2d 711, 714 (Iowa 1993); *Whyte v. Schlage Lock Co.*, 125 Cal.Rptr.2d 277, 288 (Cal. Ct. App. 2002). As addressed

---

[4] As discussed in footnote 5, Plaintiff's failure to make allegations of this nature gives rise to an additional reason for the dismissal of Count II.

in the Motion, the marketing and advertising plans at issue in this action cannot constitute a trade secret under these decisions because Plaintiff does not and cannot allege that Plaintiff and Reebok are competitors.

In an attempt to support its argument, Plaintiff relies on two decisions that have absolutely no relevance to the issues before this Court. In *Garrido v. Burger King Corp.*, 558 So.2d 79 (Fla. 3d DCA 1990), the issue was whether various common law claims were preempted by the Copyright Act. The issue of whether certain information could be considered a trade secret for the purposes of the UTSA was neither raised nor addressed in *Garrido*. The second decision, *All Pro Sports Camp*, 727 So.2d 363, 367, addressed the UTSA only in the narrow context of whether (a) common law claims for misappropriation are preempted by the UTSA, and (b) "novelty" is an essential element of a cause of action under the UTSA. As was the case with *Garrido*, the issue of whether certain information could be considered a trade secret for the purposes of the UTSA was neither raised nor addressed *All Pro Sports Camp*.[5]

To constitute a "trade secret" under the UTSA, §688.002(4)(b), Florida Statutes, requires that the information at issue also be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." In its Response, Plaintiff argues that is has satisfied §688.002(4)(b) because it allegedly spent 13 months creating marketing and advertising plans, and made "confidential" contact with Shakira (Response, pp.9-10). Plaintiff, however, is unable

---

[5] Plaintiff's reliance upon *Garrido* and *All Pro Sports Camp* is especially curious in light of the fact that those decisions provide an additional reason why Plaintiff's purported cause of action for unjust enrichment (Count II) should be dismissed with prejudice. "[W]hen one submits an idea to another, no promise to pay for its use may be implied, and no asserted agreement enforced, if the elements of novelty and originality are absent, since the property right [is] an idea based upon these two elements." *See Garrido*, 558 So.2d at 84 (internal quotations and citations omitted); *see also All Pro Sports Camp*, 727 So.2d at 367. Count II is unquestionably based upon Plaintiff's alleged conveyance to Reebok of the "idea" of sponsoring a Hispanic entertainer such as Shakira. In its Complaint, however, Plaintiff does not allege that the idea of sponsoring a Hispanic entertainer, generally, or sponsoring Shakira, specifically, was "not one already in the public domain." *See Garrido*, 558 So.2d at 84 (internal quotations and citations omitted). Plaintiff has graciously provided the Court with an additional basis supporting the dismissal of Count II.

to cite a single paragraph of the Complaint alleging that Plaintiff took steps to maintain the secrecy of materials allegedly provided to Reebok.  There are no allegations that Reebok was asked to enter a confidentiality agreement and, as demonstrated by Exhibits B and C to the Complaint, documents provided to Plaintiff were not marked "Confidential," "Private," or "Trade Secret."

Count III should be dismissed with prejudice.

## IV.   Conclusion.

For these reasons, and the reasons contained in the Motion, Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Reebok
701 Brickell Avenue
Suite 3000
Miami, Florida  33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By:_____
Peter Prieto
Florida Bar No. 501492
Scott D. Ponce
Florida Bar No. 0169528

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S.

Mail on this 10ᵗʰ day of April 2003, on Xavier L. Suarez, 2600 Douglas Road, Suite 600, Coral

Gables, Florida 33134.

By:_____

MIA1 #1216638 v1

11