UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 03-20487-CIV-SEITZ/BANDSTRA

NATIONAL COMMUNICATION
LIMITED, INC., d/b/a NATCOM
MARKETING,

    Plaintiff,

vs.

REEBOK INTERNATIONAL LTD.,

    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendant Reebok International Ltd. ("Reebok"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves for the entry of an Order dismissing with prejudice Plaintiff's First Amended Complaint because the amended pleading, like the original, fails to state a claim upon which relief can be granted.

**I.    INTRODUCTION**

What began as a three-count complaint alleging all sorts of improper conduct, including fraud and the misappropriation of trade secrets, has now been reduced to a one-count complaint seeking money damages for certain so-called services that Plaintiff voluntarily undertook in an unsuccessful attempt to retain Reebok as a client. In its initial Complaint, Plaintiff purported to state causes of action against Reebok for fraudulent misappropriation, breach of implied contract, and alleged



violations of the Uniform Trade Secrets Act. In an Order dated June 23, 2003, however, the Court granted Reebok's Motion to Dismiss the initial Complaint, and dismissed without prejudice each of Plaintiff's three purported causes of action.

Plaintiff has now filed its First Amended Complaint (the "Amended Complaint"). Gone are the claims for fraud and for the misappropriation of trade secrets. In their place, is a single claim for breach of a contract implied-at-law. That claim, like the earlier ones, must be dismissed.

## II. ARGUMENT

As this Court noted in its prior Order, the elements of a cause of action for unjust enrichment, or for breach of a contract implied in law, are: "(1) the plaintiff conferred a benefit on the defendant, who was aware of the benefit; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying value to the plaintiff." (citing *Tooltrend, Inc. v. CMT Utensil, SRL*, 198 F.3d 802, 805 (11th Cir. 1999)). In an attempt to state a cause of action for unjust enrichment, Plaintiff now alleges that it undertook an analysis and provided Reebok with "a memorandum with a market analysis" on August 4, 2001 (¶8); contacted Shakira, a Colombian singer, and ascertained her availability and suitability for a "global marketing campaign" (¶¶10-11); and that this work culminated in a recommendation to Reebok, by letter dated April 17, 2002, that a

2

"marketing campaign be anchored on the use of Shakira" (¶12).[1]  Despite these allegations, Plaintiff has failed to state a cause of action for unjust enrichment.

Notably absent from the Amended Complaint is *any* allegation that Reebok asked Plaintiff to provide it with a memorandum and market analysis, to contact Shakira and determine her availability and suitability, or to recommend and select an entertainer upon whom a marketing campaign could be anchored.  Put simply, in none of the Amended Complaint's seventeen paragraphs does Plaintiff allege that Reebok *ever* asked Plaintiff to do *anything*.  The absence of such allegations dooms the Amended Complaint.

Unjust enrichment, which is a cause of action with its roots in equity, expressly requires an equitable analysis of the underlying "circumstances."  Equity does not permit a party to provide a service to another – without being requested to do so – and then demand payment for that service.  Courts in Florida have recognized this common-sense principle and have held that unjust enrichment exists only when "'services were performed under circumstances fairly raising a presumption that the parties understood and intended that compensation was to be paid.'  Absent such circumstances, the person seeking compensation is no more than an 'officious intermeddler.'"  *See Aldebot v. Story*, 534 So.2d 1216, 1217 (Fla. 3d DCA 1989) (quoting *Tipper v. Great Lakes Chem. Co.*, 281 So.2d 10, 13 (Fla. 1973))

---

[1] As it did in its initial Complaint, Plaintiff again alleges that after it "recommended" Reebok sponsor Shakira, Reebok "did its best to deceive the plaintiff into thinking that" the idea of sponsoring Shakira had been "dropped."  Attached to the initial Complaint as Exhibit C was a letter from Plaintiff to Reebok dated May 5, 2002 in which Plaintiff unequivocally recommended – based on Plaintiff's "research" – that Reebok *not* pursue the idea of sponsoring Shakira.  Plaintiff conveniently chose not to attach the May 5th letter to the Amended Complaint.

3

(internal citations omitted); *see also Nursing Care Services, Inc. v. Dobos*, 380 So.2d 516, 518 (Fla. 4th DCA 1980) (same). Exhibit B to the Amended Complaint unequivocally establishes that the circumstances at issue here cannot equitably be construed as fairly raising a presumption that compensation was to be paid, and that Plaintiff was acting at Reebok's request. *See Flint v. ABB, Inc.*, 229 F. Supp.2d 1338, 1343 (S.D. Fla. 2002) ("because the terms of Exhibit A plainly contradict Plaintiff's conclusory allegations . . . the Court finds that Plaintiff has failed to state a claim"); *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (allegations of complaint "contradicted and controlled" by document attached to complaint); Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *University Creek Assoc. II, Ltd. v. Boston American Fin. Group, Inc.*, 100 F. Supp. 2d 1337, 1340 n.3 (S.D. Fla. 1998) (citing Rule 10(c)).

Exhibit B is a letter from Plaintiff to Reebok dated April 17, 2002, and is described as the culmination of Plaintiff's work for Reebok – the document through which Plaintiff recommended that Reebok sponsor Shakira.[2] The text of the April 17th letter establishes, without question, that (1) Reebok did not ask Plaintiff to do

---

[2] Plaintiff alleges that the April 17th letter was sent to Reebok only after Plaintiff supposedly spent thirteen months working to contact a Hispanic entertainer who Reebok could sponsor, and using its contacts "to ascertain that Shakira would be available for the global marketing campaign envisioned by [Reebok], and that she had no contracts with the competing shoe manufacturers." Despite these allegations, the only thing that the April 17th letter says about Shakira is: "NatCom recommends adopting a startegy (sic) of sponsoring up and coming Hispanic talent. Perhaps to lead the effort, Reebok would sponsor Shakira, the Colombian born singer song writer who's (sic) latest CD has become a top seller." Nowhere in the letter did Plaintiff advise Reebok that it had contacted Shakira on behalf of Reebok and determined that she was available for a global marketing campaign. Even when construed in the light most favorable to Plaintiff, the April 17th letter says nothing more than Shakira was an example of the many Hispanic entertainers who Reebok could sponsor.

4

anything, and (2) not even Plaintiff believed it had provided services to Reebok for which it would be compensated. Instead, the April 17th letter looks to the future, and addresses what Plaintiff would do for Reebok *if* it were hired by Reebok. Under the heading entitled "Core Services," for example, Plaintiff noted that "NatCom *will* coordinate with all necessary Reebok stakeholders for creative and execution related issues. The following is a list of responsibilities NatCom *would undertake* on behalf of Reebok International" (emphasis added). Similarly, under the heading entitled "Compensation," Plaintiff indicated that if hired by Reebok, its compensation *would be* either "Fee based" or "Commission based."

Exhibit B establishes, as a matter of law, that Plaintiff was doing nothing more than pitching its services to Reebok with the hope that Reebok would retain Plaintiff. Plaintiff was informing Reebok of what it would do *if* hired by Reebok, and how it would be paid *if* hired by Reebok. In fact, Plaintiff's April 17th letter ends with: "[T]hank-you for allowing us to present our program to you." It is clear, based on Plaintiff's own correspondence, that Plaintiff was simply attempting to "land" Reebok as a client, and had not performed any services for which it expected to receive payment. Neither equity nor the law of unjust enrichment permits a cause of action under such circumstances.

## III. CONCLUSION

Because Plaintiff has once again failed to allege a legally viable claim, the Amended Complaint must be dismissed. This time the dismissal should be with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Reebok
701 Brickell Avenue
Suite 3000
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: /s/ Peter Prieto
Peter Prieto
Florida Bar No. 501492
Scott D. Ponce
Florida Bar No. 0169528

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail on this 15th day of July 2003, on Xavier L. Suarez, 2600 Douglas Road, Suite 600, Coral Gables, Florida 33134.

By: /s/ Peter Prieto

MIA1 #1238089 v1