

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 03-20487-CIV-SEITZ/BANDSTRA

NATIONAL COMMUNICATION
LIMITED, INC., d/b/a NATCOM
MARKETING,

    Plaintiff,

vs.

REEBOK INTERNATIONAL LTD.,

    Defendant.
_____/

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT

Defendant Reebok International Ltd. ("Reebok") submits its reply memorandum in support of its Motion to Dismiss Plaintiff's Amended Complaint (the "Motion").

Plaintiff's Amended Complaint purports to state a single cause of action for breach of a contract implied in law. As Plaintiff concedes in its Response to the Motion, the cause of action it has attempted to plead requires the Court to conduct an equitable analysis of the underlying "circumstances." Equity does not permit Plaintiff's cause of action to proceed under the circumstances pleaded in the Amended Complaint.

The allegations of the Amended Complaint and the attached exhibits establish that Plaintiff, *without being asked by Reebok*, voluntarily undertook

various conduct in an attempt to land Reebok as a client. Plaintiff's attempt to land Reebok proved unsuccessful and Plaintiff, unhappy that it was unable to add Reebok to its roster of clients, is now attempting to charge Reebok for the value of the conduct Plaintiff *voluntarily* undertook. When Plaintiff decided to act without having been asked to do so by Reebok, Plaintiff assumed the risk that the work it allegedly performed would be for naught if Reebok did not retain Plaintiff. Equity simply does not permit Plaintiff to stick Reebok with a bill for services that Reebok never asked for.

Plaintiff first argues that Exhibit A to the Amended Complaint, which is a letter from Plaintiff to Reebok dated March 16, 2001, precludes dismissal. Plaintiff contends this letter establishes that "plaintiff was **requested** to present its ideas" (emphasis in original). Exhibit A establishes no such thing. Plaintiff's letter does nothing more than (a) inform Reebok of the "capabilities of our agency," and (b) enclose a "brochure that describes our agency in greater detail along with some samples of our current work." Nowhere in Exhibit A did Plaintiff present any ideas. Additionally, and because Plaintiff concedes that Exhibit A was "the first communication between the parties," it is clear that at the time the letter was written Reebok ***had not*** asked Plaintiff to create a memorandum and market analysis, to contact Shakira and determine her availability and suitability, or to recommend and select an entertainer upon whom a marketing campaign could be anchored.[1] Exhibit A does not support Plaintiff's purported cause of action.

---

[1] The fact that at the time the letter was written Reebok had not asked Plaintiff to do anything is further illustrated by the last sentence of the letter: "On behalf of the NatCom team, I look forward

2

Plaintiff argues that "[f]or approximately one entire year, the parties engaged in 'numerous conference calls' involving high level employees of both sides," and the "'numerous conference calls dealt with the formulation of a marketing plan to attract Hispanic clientele who would buy defendant's products.'" The fact that the parties convened "numerous conference calls" during which they discussed Reebok's needs and what Reebok was looking for in a marketing and advertising agency is irrelevant. Instead, what is important is the fact that ***nowhere*** in the Amended Complaint does Plaintiff allege that Reebok, during any of these conference calls, ever asked Plaintiff to do anything. Also important is the fact that Plaintiff ***does not*** allege that it informed Reebok during any of these conference calls that it was performing services for Reebok. Plaintiff cannot convert an allegation that the parties spoke on the telephone into an allegation that Reebok asked Plaintiff to do something.

Plaintiff argues that its cause of action should be permitted to proceed because the Amended Complaint alleges that on July 16, 2001 some of Plaintiff's employees traveled to Reebok's headquarters to meet with some of Reebok's employees.[2] As was the case with the "numerous conference calls," the fact that the parties held a face-to-face meeting means nothing. It is irrelevant because the Amended Complaint does not allege that during this meeting Reebok asked

---

to the opportunity to be of service to you and your organization." If Reebok had asked Plaintiff to do something, then Plaintiff would not have had to "look forward" to an opportunity – it would have already been given an opportunity.

[2] In its Response, Plaintiff states that this meeting was "scheduled" by Reebok, and cites paragraph 7 of the Amended Complaint as support for this statement. In paragraph 7, however, Plaintiff ***does not*** allege that Reebok scheduled or requested the meeting.

3

Plaintiff to do anything, nor does it allege that Plaintiff informed Reebok during this meeting that it was performing services for Reebok. Plaintiff's attempt to support its purported cause of action for unjust enrichment by relying upon an allegation that the parties held a face-to-face meeting is unavailing.

Plaintiff argues that the Amended Complaint should not be dismissed because "[l]ess than a month after the meeting in defendant's national headquarters, plaintiff submitted a memorandum with an analysis of the market being pursued by defendant." Plaintiff *does not* argue that Reebok asked Plaintiff to prepare and submit the supposed market analysis, nor does Plaintiff argue that it informed Reebok it was preparing a market analysis. This tacit admission is consistent with the Amended Complaint's failure to allege that Plaintiff was requested to prepare a market analysis, and that Plaintiff informed Reebok it was preparing a market analysis. Instead, Plaintiff argues that Reebok "could have sent back the market analysis and indicated that it was not interested in continuing the relationship with plaintiff." This argument fails because it ignores the allegations of the Amended Complaint and, in doing so, attempts to place Reebok in a "catch 22" situation.

In paragraph 9 of the Amended Complaint, Plaintiff alleges "[t]he market analysis . . . conferred a valuable benefit on the defendant. Defendant, through its employees/agents, was aware of that benefit and voluntarily accepted and retained the benefit conferred by plaintiff." The "benefit" allegedly conferred upon Reebok *was not* the paper that the market analysis was printed upon. Rather, the benefit

4

allegedly conferred upon Reebok was the information contained in the analysis. Because Plaintiff defines the benefit as Reebok becoming aware of the information contained in the market analysis, permitting Plaintiff's cause of action to proceed would mean that once Reebok opened the envelope containing the market analysis, it was impossible for Reebok to avoid the liability Plaintiff is attempting to create. Put another way, if Reebok should have simply read the analysis and then returned it to Plaintiff, Reebok still would have "benefited" under Plaintiff's theory because Reebok read the analysis before returning it. Equity does not permit such a result.

Plaintiff concludes by addressing Exhibit B to the Amended Complaint, which is a letter from Plaintiff to Reebok dated April 17, 2002, and is described as the culmination of Plaintiff's work for Reebok – the document through which Plaintiff recommended that Reebok sponsor Shakira. As fully addressed in the Motion, Exhibit B is a forward looking letter that addresses, among other things: (1) who Plaintiff *would* coordinate with *if* hired by Reebok; (2) the responsibilities Plaintiff *would* undertake *if* hired by Reebok; and (3) how Plaintiff *would* be compensated *if* hired by Reebok. Exhibit B establishes that Plaintiff was doing nothing more than pitching its services to Reebok with the hope that Reebok would retain Plaintiff.

When faced with the content of the April 17th letter – content that Plaintiff drafted – Plaintiff is able to say only that the first sentence of the letter "makes clear that plaintiff already considered itself a strategic marketing partner of the defendant, with only the details to work out." Plaintiff's suggestion that this single

5

sentence is capable of overriding the plain language of the balance of the letter is unavailing. Indeed, the April 17th letter ends with: "[T]hank-you for allowing us to present our program to you." It is clear, based on Plaintiff's own correspondence, that Plaintiff was simply attempting to land Reebok as a client, and had not performed any services for which it expected to receive payment.

Plaintiff's attempt to charge Reebok for services that Reebok did not request is no different from a gardener who leaves a business card at a homeowner's front door. The homeowner reads the business card and then, with an eye towards perhaps hiring the gardener, calls the gardener to find out what type of services he or she performs. After this telephone call – or even after "numerous" telephone calls – the gardener returns to the house for a face-to-face meeting for further discussions and so that the gardener and the owner can inspect the property while the gardener describes what he or she could do for the owner. After the telephone calls and the face-to-face meeting at the house, the gardener – *without being asked by the homeowner* – returns to the house and mows the lawn and prunes the trees. The gardener then presents the homeowner with a bill for these services and demands immediate payment.

No one would dispute that the gardener, who voluntarily performed services without being asked to do so by the homeowner, is without remedy. That the gardener and the homeowner spoke on the telephone and met in person is of no consequence because the fact remains that the gardener acted without being asked to do so. Plaintiff is no different from the gardener, and its voluntary performance

of services should meet the same result. Plaintiff claims to have expended great effort in creating a market analysis for Reebok, but Plaintiff does not allege that Reebok requested a market analysis or was informed that Plaintiff was creating a market analysis. Plaintiff claims to have spent thirteen months making confidential contact with Shakira to determine her availability and suitability, but Plaintiff does not allege that Reebok asked Plaintiff to contact Shakira (or anyone), or was informed that Plaintiff was contacting Shakira on Reebok's behalf.

Plaintiff has now filed two complaints, and in neither complaint has Plaintiff made the simple allegation that Reebok asked Plaintiff to perform services, or was informed that Plaintiff was performing services on Reebok's behalf. Equity simply does not permit a party to perform services for another, without being requested to do so, and then seek to recover the value of the services.

Plaintiff's Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Reebok
701 Brickell Avenue
Suite 3000
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: _____
Peter Prieto
Florida Bar No. 501492
Scott D. Ponce
Florida Bar No. 0169528

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail on this 1st day of August 2003, on Xavier L. Suarez, 2600 Douglas Road, Suite 600, Coral Gables, Florida 33134.

By: _____

MIA1 #1240635 v1