

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 03-20487-CIV-SEITZ/BANDSTRA

NATIONAL COMMUNICATION
LIMITED, INC., d/b/a NATCOM
MARKETING, a Florida Corporation

    Plaintiff,

v.

REEBOK INTERNATIONAL LTD.,
a Massachusetts Corporation

    Defendant.



## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE is before the Court on** Plaintiff's Motion for Partial Summary Judgment on Liability, [D.E. 35], and Defendant's Motion for Summary Judgment, [D.E. 59]. Upon review of the Motions, Responses, and Replies, the Plaintiff's Motion is denied and Defendant's Motion is granted because there is no genuine material issue of fact for trial and Defendant is entitled to summary judgment as a matter of law. Although Plaintiff's breach of an implied contract claim is based upon the conveyance of an idea, Plaintiff failed to show the requisite element of novelty. In addition, Plaintiff cannot establish a prima facie case for its breach of an implied contract claim because it cannot show that it conferred a benefit upon Defendant.



## Undisputed[1] Factual Background

Plaintiff National Communication Limited, d/b/a Natcom Marketing ("Natcom") sued Defendant Reebok International Ltd ("Reebok") for breach of an implied contract. Natcom alleges that it utilized its resources and knowledge of the market and expended its time and efforts over a period of fourteen months to develop a marketing plan targeting the Hispanic community for Reebok. See Compl. ¶¶ 18, 19. Specifically, Natcom contends that it conveyed the following four ideas to Reebok, all of which Reebok implemented in its marketing strategy without compensating Natcom: (1) employing Shakira as a spokesperson; (2) sponsoring Shakira's celebrity tour; (3) using the slogans "Reebok Rave" and "Whenever, Wherever"; and (4) advising Reebok to use "multi-brand cost efficiencies" in its marketing efforts. See Hernandez Aff. ¶¶ 9 - 11; Hernandez Dep., Ex. 5, 6.

Regarding the selection of Shakira as a spokesperson and the idea of a promotional tour, Natcom contends that it recommended these courses of action to Reebok as early as April 3, 2002 in a conference call between the parties, and again on April 17, 2002 in a letter presented to Reebok. See Hernandez Dep. at [123, 139]. Natcom also contends that it discussed using the phrase "Wherever, Whenever" with Tom Mitchell, Shakira's manager, in the first few months of 2002, and incorporated the "Reebok Rave" theme into the April 17, 2004 letter to Reebok.[2] Hernandez Aff. ¶¶ 9-10. Finally, Natcom suggested the creation of "multi brand cost efficiencies" to Reebok in a

---

[1] Natcom did not include a statement of material facts which is . . . "supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." Local Rules of the Southern District of Florida R. 7.5.C.2. Therefore, all material facts set forth in Defendant's statement of undisputed facts are deemed admitted because they are not "controverted by the opposing party's statement . . . supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits . . ." Id. at R. 7.5.D.

[2] Although Natcom spoke with Shakira's manager about the possibility of using the phrase "Wherever, Whenever" in a marketing campaign, Natcom failed to present any evidence suggesting that it communicated this idea to Reebok.

letter dated February 21, 2002. Hernandez Dep., Ex. 5.

When Reebok received the April 17, 2002 letter from Natcom, however, it had already decided to pursue a relationship with Shakira. Reebok first discussed the idea of using Shakira as a potential spokesperson between November 2001 and January 15, 2002, when Reebok's President and Chief Operating Officer suggested that she would be a good addition to Reebok's "Sound and Rhythm of Sport" marketing campaign. Muktesh Pant Dep. at [17]. On January 15, 2002, at Reebok's Global Marketing Summit, Reebok executives again considered employing Shakira after a marketing director played a video cassette of the celebrity performing her hit song "Whenever, Wherever." Steve Hagen Dep. at [31-33]; Jorge Dionne Dep. at [40-42]. At this point, Reebok affirmatively decided to pursue a relationship with Shakira, and by the end of January 2002, Reebok was negotiating for Shakira's services as a spokesperson, including the right to be associated with her hit song "Wherever, Whenever" and for Reebok to be a sponsor of her world tour. Muktesh Pant Dep. at [8-9, 16, 51-52]; **Def.'s Notice Filing**, Ex. G; Wendy Kula Decl. ¶ 5.

In addition, Reebok released the Reebok Rave DMX running shoe during the first quarter (January - March) of 2000, more than two years before it received the April 17, 2002 letter. Bill McInnis Decl. ¶¶ 2-4. Furthermore, the idea of using multi-brand cost efficiencies is a general marketing principle, often covered in introductory marketing and advertising courses. Wendy Kula Dec. ¶ 7. Accordingly, Reebok's decision to use multi-brand cost efficiencies was a "common sense conclusion," especially in light of the facts that Sony and Pepsi were already sponsoring Shakira's tour, and Shakira was endorsing Pepsi's products Id. ¶¶ 8-13.

## Discussion

### I. Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Accepting the record evidence as truthful, the Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Anderson, 477 U.S. at 251-52).

### II. Natcom's Failure to Establish that Its Ideas Were Novel

Reebok asserts that summary judgment is appropriate because Natcom failed to proffer any evidence establishing that its ideas were novel. Under Florida law, a cause of action based on the conveyance of an idea requires that the idea be novel. See Garrido v. Burger King Corp., 558 So.2d 79, 84 (Fla. 3d DCA 1990) (adopting the novelty requirement in state law cases involving the conveyance of an idea); see also All Pro Sports Camp, Inc. v. Walt Disney Co., 727 So.2d 363, 367 (Fla. 5th DCA 1999) (applying the novelty requirement in a breach of implied contract claim). Accordingly, courts will not imply a contract if the elements of novelty and originality are absent. Garrido, 558 So.2d at 84 (citations omitted). In addition, a novel or original idea is one that goes beyond a "variation on a theme" and is new to the public domain.

Garrido, 558 So.2d at 84. An idea that improves upon a standard technique or quality or mixes known ingredients in somewhat different proportions does not warrant protection. See Educ. Sales Programs, Inc. v. Dreyfus Corp., 317 N.Y.S.2d 840, 844 (N.Y. Sup. Ct. 1970). For instance, in Woman Golfer, Inc. v. Meredith, 792 F. Supp. 211 (S.D.N.Y. 1992), the court opined that the idea of a women's golf magazine was neither original nor novel, despite the "unique combination of elements comprising its business plan." Id. at 213-14. In addressing plaintiff's assertion that it's business plan was unique because of its controlled circulation of subscribers, the court noted, "the suggestion that there is something novel or original in targeting a women's golf magazine to women aged 25 to 50 with above-average incomes borders on the ludicrous." Id. Similarly, in McGhan v. Ebersol, 608 F.Supp. 277 (S.D.N.Y. 1985), the plaintiff claimed that his idea of broadcasting a music video show over the NBC television network was novel and original. The court noted, however, that the plaintiff was "unable to point to any specific component ... that did not have its origin either in MTV or in the industry in general," and found that the ideas were a mere adaption of existing knowledge. Id. at 287.

In the instant case, Natcom has failed to put forth any evidence establishing that its ideas were either novel or original. Although Natcom's Complaint conclusively asserts that Reebok "unjustly enriched itself using the *novel* ideas, analysis, contacts and other information acquired from the plaintiff," Natcom did not offer any depositions, affidavits or other evidence to substantiate its claim. See Compl. at ¶ 20 (emphasis added). In addition, a common sense reading of the record reveals the difficulty in establishing novelty in this case. Natcom's ideas - the use of a celebrity and her songs to market a company's products, the use of the term "Reebok Rave," the idea of sponsoring a celebrity's tour, and using multi-brand cost efficiencies - are neither new to Reebok nor the marketing industry. Not only did Reebok come out with the

Reebok Rave DMX running shoe two years before Natcom allegedly gave the idea to Reebok, but Reebok had already launched its "Sounds and Rhythm of Sport" marketing campaign, whereby it sought to combine the worlds of music and sport to promote itself and its products. Moreover, not even the specific idea of employing Shakira can be considered novel, as Sony and Pepsi were already sponsoring her tour, and Shakira was endorsing Pepsi's products. Natcom's ideas are simply a "mixture of known ingredients" that represent a variation of existing knowledge. In conclusion, because Natcom failed produce evidence sufficient to establish the requisite elements of novelty and originality, Reebok is entitled to summary judgment on Natcom's claim of breach of an implied contract.

### III. Natcom's Failure to Establish Breach of Implied Contract

As an additional basis for summary judgment, Reebok contends that Natcom failed to set forth any evidence establishing the elements of breach of an implied contract. Contracts implied in law are obligations imposed by law to prevent unjust enrichment. See Rite-Way Painting and Plastering, Inc. v. Tetor, 582 So.2d 15, 17 (Fla. 2d DCA 1991). The elements of an implied contract are the following: (1) a benefit conferred upon defendant by the plaintiff; (2) the defendant's appreciation of the benefit; and (3) the defendant's acceptance and retention of the benefit under the circumstances make it inequitable for him to retain it without paying value. Id.; see also Turner v. Fitzsimmons, 673 So.2d 532, 536 (Fla. 1st DCA 1996).

Here, the critical issue is whether Natcom has put forth sufficient evidence to establish the first element of its claim. Reebok contends that it did not receive any benefits through its association with Natcom, whereas Natcom asserts that it provided valuable services to Reebok by formulating a marketing plan targeting the Hispanic community. According to Natcom, it used its knowledge of the market, available demographics, and past experience to develop the Reebok

marketing plan. Regarding the ideas to hire Shakira as a spokesperson and sponsor her celebrity tour, Natcom contends that it recommended these courses of action to Reebok as early as April 3, 2003, and again on April 17, 2002.[3] In addition, Natcom claims that it bestowed a benefit upon Reebok by suggesting the slogans "Reebok Rave" and "Wherever, Whenever," and by advising Reebok to use multi-brand cost efficiencies in its marketing campaign.

Despite Natcom's claims, however, the record does not support a finding that Natcom conferred a benefit upon Reebok. The undisputed evidence reveals that Reebok first considered employing Shakira sometime between November 2001 and January 2002, well before Natcom first mentioned Shakira's name to Reebok, and had affirmatively decided to pursue a relationship with Shakira by the end of January 2002. Accordingly, Natcom's April 2002 suggestion to use Shakira as a spokesperson could only have reaffirmed Reebok's own decision to undertake negotiations with the celebrity. In addition, the evidence establishes that Reebok did not benefit from Natcom's idea to use the slogan "Reebok Rave;" Reebok released the Reebok Rave DMX running shoe in the first quarter of 2000, more than two years before Natcom proposed using this slogan. Similarly, Natcom failed to present any evidence demonstrating that it conveyed the idea of using the slogan "Wherever, Whenever" to Reebok, whereas Reebok demonstrated that by the end of January 2002, it was already negotiating for Shakira's services as a spokesperson, including the right to be associated with this hit song. Finally, the idea of using multi-bran cost efficiencies is a general marketing principle, and Reebok put forth evidence establishing that it

---

[3] Reebok contends that the Court should only consider Natcom's ideas of hiring Shakira and sponsoring her celebrity tour in ascertaining whether Natcom conferred a benefit upon Reebok, because Natcom waited to advance the remaining facts until the summary judgment stage. However, after a careful consideration of all of the facts, the Court finds that Natcom has not put forth sufficient evidence to support its case, and therefore, it is unnecessary to address this issue.

utilized this strategy as a result of its own common sense.

Upon reviewing the evidence in the light most favorable to Natcom, the Court finds that reasonable jurors could not conclude that Natcom conveyed a benefit upon Reebok. Natcom failed to present sufficient evidence to prove a prima facie case of breach of an implied contract, and accordingly, Reebok is entitled to judgment as a matter of law.

Therefore, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment as to Liability is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. All pending motions are DENIED as MOOT. This CASE is CLOSED.

ORDERED in Miami, Florida this 26th day of August, 2004.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

CC:
Magistrate Judge Bandstra
All Counsel of Record